James I. Stang (CA Bar No. 94435)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4114
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  jstang@pszjlaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:15-bk-17446-VZ |
| WANDA ROZAR, | Chapter 7 |
| Debtor. | **OBJECTION OF DEBTOR TO CLAIM OF WELLS FARGO BANK, N.A. [CLAIM NO. 7]; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF JAMES I. STANG AND DEBTOR** |
| | Hearing:<br>Date: September 19, 2023<br>Time: 11:00 a.m.<br>Place: Courtroom 1368<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Fed. Bldg. & Courthouse<br>255 E. Temple Street, Suite 1360<br>Los Angeles, CA 90012 |

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, WELLS FARGO BANK, N.A., THE OFFICE OF THE UNITED STATES TRUSTEE, AND CERTAIN OTHER INTERESTED PARTIES:

Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rules 3007-1 and 9013-1, Wanda Rozar, the debtor (the "Debtor") in the above-captioned chapter 7 case, hereby moves the Court for an Order disallowing the $374,837.62 claim filed by Wells Fargo Bank, N.A. ("Wells Fargo" or the "Claimant"), which is Claim No. 7 on the Court's Claims Register (the "Claim").

The Claim, which was filed in 2015, is based on a mortgage on real property previously owned by the Debtor.  This chapter 7 case was reopened in 2023 to administer assets.  The Debtor hereby

objects to the Claim because the underlying debt has been satisfied pursuant to a short sale completed in 2017.

This Objection is based on the Memorandum of Points and Authorities and Declarations of James I. Stang and Wanda Rozar set forth below, the exhibits attached thereto, the concurrently filed Notice of this Objection served on the Claimant and certain other interested parties, all pleadings, papers, and records on file with the Court in this proceeding, and on such other evidence, oral or documentary, as may be presented to and considered by the Court in connection with this Objection and the hearing hereon.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

1.    Disallowing the Claim in its entirety; and

2.    Granting such other and further relief as the Court deems just and proper.

Dated:  August 16, 2023                **PACHULSKI STANG ZIEHL & JONES LLP**

                                By:    */s/ James I. Stang*
                                       James I. Stang

                                       Attorneys for Debtor

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.    STATEMENT OF FACTS

On May 8, 2015, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). Concurrently therewith, the Debtor filed her bankruptcy schedules.  *See* Dkt. No. 1.

On or about November 13, 2015, the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code.  Shortly thereafter, David A. Gill was appointed to serve as chapter 7 trustee in the Bankruptcy Case.  On February 8, 2016, Mr. Gill filed a no asset report and, on March 2, 2016, the Bankruptcy Case was closed.

On February 14, 2023, the United States Trustee (the "UST") filed a motion to reopen the case (the "Motion to Reopen") to administer assets.  *See* Dkt. No. 38.  The Motion to Reopen also sought appointment of a chapter 7 trustee for purposes of administering the bankruptcy estate.

On February 24, 2023, the Court entered an order granting the Motion to Reopen and directed the UST to appoint a chapter 7 trustee.  On February 24, 2023, Howard M. Ehrenberg was appointed to serve as the chapter 7 trustee in this case.  The same day, the Trustee filed a notice of assets and possible dividend, and the Court fixed May 30, 2023 as the deadline to file proofs of claim.

According to the Debtor's Schedule D filed in this case, on the Petition Date, Wells Fargo was owed a total of $379,554.42 that was secured by real property commonly known as 28231 Canterbury Court, Valencia, California 91354 (the "Property").  Attached hereto as **Exhibit 1** is a copy of the page of the Debtor's Schedule D [Dkt. No. 1] listing the secured debt owed to Wells Fargo.

On September 21, 2015, Wells Fargo filed its Claim against the bankruptcy estate (the "Estate") in the amount of $374,837.62, which is Claim No. 7 on the Court's Claims Register. A copy of the Claim is attached hereto as **Exhibit 2**.  The documents attached to the Claim evidence that the Claim is based upon the same debt that was listed on the Debtor's Schedule D.

On or about May 31, 2017, a short sale of the Property was conducted.  Pursuant to the short sale, the Debtor was released from her obligation to pay back the mortgage under its original terms,

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this memorandum of points and authorities is attached.

3

and Wells Fargo accepted the proceeds of the short sale as payment in full.  A copy of the short sale notice sent by Wells Fargo to the Debtor, dated April 10, 2017, is attached hereto as **Exhibit 3**.  A copy of the Final Settlement Statement for the short sale is attached hereto as **Exhibit 4**.  A copy of the reconveyance of the Property to Wells Fargo is attached hereto as **Exhibit 5**.

On July 6, 2023, the Debtor's counsel caused a letter to be faxed to Wells Fargo's bankruptcy department, stating that the debt underlying the Claim has been satisfied pursuant to the short sale and requesting that the Claim be withdrawn.  A copy of that letter is attached hereto as **Exhibit 6**.  To date, no response has been received from Wells Fargo.

## II.    <u>APPLICABLE LEGAL AUTHORITY AND ARGUMENT</u>

### A.    <u>Legal Authority Regarding the Applicable Burdens of Proof.</u>

A proof of claim must provide sufficient facts and evidence to support the claim.  *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001; *Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) ("Initially, the claimant must allege facts sufficient to support the claim.").  Absent such information, the claim is not entitled to *prima facie* validity under Bankruptcy Rule 3001(f), and if the claimant does not provide adequate evidence to support its claim, the claim may be disallowed.  *See Consolidated Pioneer Mortg.*, 178 B.R. at 226–27.

The burden of proof under section 502(a) of the Bankruptcy Code rests on different parties at different times.  *Id.* at 226.  Initially, the claimant must allege facts sufficient to support the claim.  *Id.* If the averments in the claim meet this standard of sufficiency, it is *prima facie* valid; a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.  *Id.*  The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the claim.  *Id.*  The objector must produce evidence equal in force to the *prima facie* case; the objector must produce evidence that, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *Id.*  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence.  *Id.*  The burden of persuasion is always on the claimant.  *Id.*

4

1    **B.    The Claim Should Be Disallowed Because the Underlying Debt Has Been Satisfied.**

2         Pursuant to the short sale, the Debtor was released from her obligation to pay back the

3    mortgage under its original terms, and Wells Fargo accepted the proceeds of the short sale as payment

4    in full.  It is evident from the documents relating to the short sale attached hereto as <u>Exhibit 3</u> and

5    <u>Exhibit 4</u> that the underlying debt to Wells Fargo has been paid in full.  Accordingly, the Court should

6    disallow the Claim in its entirety.

7    **III.    <u>CONCLUSION</u>**

8         For the reasons set forth above, the Trustee respectfully requests that the Court enter an Order:

9    1.    Disallowing the Claim in its entirety; and

10   2.    Granting such other and further relief as the Court deems just and proper.

11

12   Dated:  August 16, 2023                **PACHULSKI STANG ZIEHL & JONES LLP**

13

14                                          By:   */s/ James I. Stang*
                                                   James I. Stang

15                                          Attorneys for Debtor

16

17

18

19

20

21

22

23

24

25

26

27

28

5

### DECLARATION OF JAMES I. STANG[2]

I, James I. Stang, declare as follows:

1.  The following matters are of my own personal knowledge and, if called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.  I am an individual over the age of 18 years and am competent to make this declaration under oath.

2.  I am a partner with the law firm of Pachulski Stang Ziehl & Jones LLP, which is counsel for Wanda Rozar, the Debtor in the above-captioned chapter 7 case.

3.  I make this declaration in support of the Debtor's objection to Claim No. 7 filed by Wells Fargo Bank, N.A. ("Wells Fargo").

4.  On May 8, 2015, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Bankruptcy Case").  Concurrently therewith, the Debtor filed her bankruptcy schedules.  *See* Dkt. No. 1.

5.  On or about November 13, 2015, the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code.  Shortly thereafter, David A. Gill was appointed to serve as chapter 7 trustee in the Bankruptcy Case.  On February 8, 2016, Mr. Gill filed a no asset report and, on March 2, 2016, the Bankruptcy Case was closed.

6.  On February 14, 2023, the United States Trustee (the "UST") filed a motion to reopen the case (the "Motion to Reopen") to administer assets.  *See* Dkt. No. 38.  The Motion to Reopen also sought appointment of a chapter 7 trustee for purposes of administering the bankruptcy estate.

7.  On February 24, 2023, the Court entered an order granting the Motion to Reopen and directed the UST to appoint a chapter 7 trustee.  On February 24, 2023, Howard M. Ehrenberg was appointed to serve as the chapter 7 trustee in this case.  The same day, the Trustee filed a notice of assets and possible dividend, and the Court fixed May 30, 2023 as the deadline to file proofs of claim.

8.  According to the Debtor's Schedule D filed in this case, on the Petition Date, Wells Fargo was owed a total of $379,554.42 that was secured by real property commonly known as 28231 Canterbury Court, Valencia, California 91354 (the "Property").  Attached hereto as Exhibit 1

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this declaration is attached.

DOCS_DE:244194.1 55929/001

is a copy of the page of the Debtor's Schedule D [Dkt. No. 1] listing the secured debt owed to Wells Fargo.

9.    On September 21, 2015, Wells Fargo filed its Claim against the bankruptcy estate (the "Estate") in the amount of $374,837.62, which is Claim No. 7 on the Court's Claims Register. A copy of the Claim is attached hereto as Exhibit 2.  The documents attached to the Claim evidence that the Claim is based upon the same debt that was listed on the Debtor's Schedule D.

10.    Under my supervision and direction, on July 6, 2023 my firm faxed a letter to Wells Fargo's bankruptcy department, stating that the debt underlying the Claim has been satisfied pursuant to the short sale and requesting that the Claim be withdrawn.  A copy of that letter is attached hereto as Exhibit 6.  To date, my firm has not received a response from Wells Fargo.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on August 16, 2023, at Los Angeles, California.

/s/ James I. Stang
James I. Stang

DOCS_DE:244194.1 55929/001

| | |
|---|---|
| 1 | **DECLARATION OF WANDA ROZAR**[3] |
| 2 | I, Wanda Rozar, declare as follows: |
| 3 | 1.    The following matters are of my own personal knowledge and, if called upon to do so, |
| 4 | I could and would competently testify as to the truth of the matters set forth herein.  I am an individual |
| 5 | over the age of 18 years and am competent to make this declaration under oath. |
| 6 | 2.    I am the Debtor in the above-captioned chapter 7 case. |
| 7 | 3.    I make this declaration in support of my objection to Claim No. 7 filed by Wells Fargo |
| 8 | Bank, N.A. ("Wells Fargo"). |
| 9 | 4.    Wells Fargo was a creditor in this case in connection with a mortgage loan on real |
| 10 | property commonly known as 28231 Canterbury Court, Valencia, California 91354 (the "Property"). |
| 11 | 5.    On or about May 31, 2017, a short sale of the Property was conducted.  Pursuant to the |
| 12 | short sale, I was released from my obligation to pay back the mortgage under its original terms, and |
| 13 | Wells Fargo accepted the proceeds of the short sale as payment in full. |
| 14 | 6.    A copy of the short sale notice sent by Wells Fargo to the Debtor, dated April 10, 2017, |
| 15 | is attached hereto as Exhibit 3. |
| 16 | 7.    A copy of the final settlement statement for the short sale is attached hereto as |
| 17 | Exhibit 4. |
| 18 | 8.    A copy of the reconveyance of the Property to Wells Fargo, dated June 27, 2017 and |
| 19 | recorded on June 29, 2017, is attached hereto as Exhibit 5. |
| 20 | I declare under penalty of perjury that the foregoing is true and correct, and that this |
| 21 | declaration was executed on August _12_, 2023, at _Stevenson Ranch, CA_. |
| 22 | |
| 23 | _Wanda Rozar_ |
| | Wanda Rozar |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | [3]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this declaration is attached. |

DOCS_DE:244194.1 55929/001

# EXHIBIT 1

B6D (Official Form 6D) (12/07)

In re  **Wanda Rozar**                                            ,                    Case No. _____
                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No.  **Chase Auto Finance** | | - | | | **Purchase Money Security**  **2007 Mercedes Benz C230 (79,000 miles)-title and loan are in debtor father's name.  Father makes payments on the car, but debtor drives the car.** | | | | | |
| | | | | | Value $          **9,528.00** | | | | **7,000.00** | **0.00** |
| Account No.  **Village Walk Maintenance Corp. c/o Valencia Management Corp. 27644 Newhall Ranch Road, #45 Valencia, CA 91355** | | - | | | **Homeowner's Association Dues**  **Property Commonly Known As 28231 Canterbury Court, Valencia, California 91354** | | | | | |
| | | | | | Value $        **350,000.00** | | | | **2,000.00** | **2,000.00** |
| Account No. **xxxxxx xx 7729**  **Wells Fargo Home Mortgage Attn: Bankruptcy Department MAC #D3347-014 3476 Stateview Blvd. Fort Mill, SC 29715** | | - | | | **03/2007**  **First Mortgage**  **Property Commonly Known As 28231 Canterbury Court, Valencia, California 91354** | | | | | |
| | | | | | Value $        **350,000.00** | | | | **379,554.42** | **29,554.42** |
| Account No. **1333062-31**  **Cal-Western Reconveyance Corp. 525 East Main Street P.O. Box 22004 El Cajon, CA 92022-9004** | | | | | **Representing: Wells Fargo Home Mortgage** | | | | **Notice Only** | |
| | | | | | Value $ | | | | | |

_**0**_ __ continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | **388,554.42** | **31,554.42** |
| Total (Report on Summary of Schedules) | **388,554.42** | **31,554.42** |

# **<u>EXHIBIT 2</u>**

B10 (Official Form 10) (04/13)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA** | **PROOF OF CLAIM** |

| Name of Debtor:<br>WANDA ROZAR | Case Number<br>2:15-bk-17446-VZ | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
WELLS FARGO BANK, N.A.

**COURT USE ONLY**

Name and address where notices should be sent:
WELLS FARGO BANK, N.A.
ATTN: BK DEPT - MAC #T7416-023
4101 WISEMAN BLVD
SAN ANTONIO, TX  78251
Telephone number: (866) 259-7728        email: WMSABKSUPPORT@WELLSFARGO.COM

☐ Check this box if this claim amends a previously filed claim.
Court Claim Number: _____
*(If known)*
Filed on : _____

Name and address where payment should be sent (if different from above):
WELLS FARGO HOME MORTGAGE
1 HOME CAMPUS  X2302-041
DES MOINES, IA  50306
Telephone number: (866) 259-7728        email: WMSABKSUPPORT@WELLSFARGO.COM

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim.  Attach a copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**        $374,837.62

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  MONEY LOANED
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>   7  7  2  9 | **3a.  Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>W F C M P P 1 5 1 7 4 4 6 C A C 1 3 2 6 7 7 2 9<br>(See instruction #3b) |
|---|---|---|

**4.  Secured Claim**  (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$ 82,182.10

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** 28231 CANTERBURY CT, VALENCIA, CA 91354-1116

**Basis for perfection:**  Deed of Trust

**Value of Property: $** _____

**Amount of Secured Claim:**  $ 374,837.62

**Annual Interest Rate** 5.750 % ☐Fixed or ☒Variable
**(when case was filed)**

**Amount Unsecured:**  $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

$ _____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                  or their authorized agent.              (See Bankruptcy Rule 3005.)
                                                                  (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  MARISOL A. NAGATA
Title:            Attorney for WELLS FARGO BANK, N.A.
Company:   BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP        /s/ MARISOL A. NAGATA              09/21/2015
Address and telephone number (if different from notice address above):          (Signature)                         (Date)
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA  91765

Telephone number  (626) 915-5714    email: CDCAECF@BDFGROUP.COM

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

B 10A (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | WANDA ROZAR | **Case number:** | 2:15-bk-17446-VZ |
| **Name of creditor:** | WELLS FARGO BANK, N.A. | **Last four digits** of any number you use to identify the debtor's account | 7 7 2 9 |

**Uniform Claim Identifier:** WFCMPP1517446CAC13267729

### Part 1: Statement of Principal and Interest Due as of the Petition Date

**Itemize the principal and interest due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**                                                 (1) $ 293,062.86

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 3.750 % | 05/01/2011 | 06/30/2011 | $ 1,831.64 |
| 4.250 % | 07/01/2011 | 06/30/2012 | $ 12,455.16 |
| 4.750 % | 07/01/2012 | 06/30/2013 | $ 13,920.48 |
| 5.250 % | 07/01/2013 | 06/30/2014 | $ 15,385.80 |
| 5.750 % | 07/01/2014 | 05/08/2015 | +$ 14,411.94 |

Total interest due as of the petition date   $ 58,005.02   Copy total here ▶   (2) + $ 58,005.02

3. **Total principal and interest due**                              (3) $ 351,067.88

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

**Itemize the fees, expenses, and charges due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 12/16/2009, 01/16/2010, 02/16/2010, 03/16/2010, 04/16/2010, 05/17/2010, 06/16/2010, 07/16/2010, 08/16/2010, 09/16/2010, 10/16/2010, 11/16/2010, 12/16/2010, 01/17/2011, 02/16/2011, 03/16/2011, 04/16/2011, 05/16/2011, 06/16/2011, 07/16/2011, 08/16/2011, 09/16/2011, 10/17/2011, 11/16/2011 | (1) $ | 1,043.81 |
| 2. Non-sufficient funds (NSF) fees | | (2) $ | |
| 3. Attorney's fees | 07/12/2011 | (3) $ | 427.50 |
| 4. Filing fees and court costs | | (4) $ | |
| 5. Advertisement costs | | (5) $ | |
| 6. Sheriff/auctioneer fees | | (6) $ | |
| 7. Title costs | | (7) $ | |
| 8. Recording fees | | (8) $ | |
| 9. Appraisal/broker's price opinion fees | | (9) $ | |
| 10. Property inspection fees | 03/23/2011 | (10) $ | 20.00 |
| 11. Tax advances (non-escrow) | | (11) $ | |
| 12. Insurance advances (non-escrow) | | (12) $ | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | See attached escrow analysis | (13) $ | 6,393.64 |
| 14. Property preservation expenses. Specify: | | (14) $ | |

| | | | | |
|---|---|---|---|---|
| 15. Other. Specify: | Bankruptcy Attorney Fee | 03/14/2012 | (15) $ | 150.00 |
| 16. Other. Specify: | | | (16) $ | |
| 17. Other. Specify: | | | (17) $ | |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | | (18) $ | 8,034.95 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 08/14/2013 | |
| | Number of installment payments due | (1) 48 | |
| 2. **Amount of installment payments due** | 2 installments @ 1,275.49 | $ 2,550.98 | |
| | 12 installments @ 1,397.60 | $ 16,771.20 | |
| | 7 installments @ 1,519.71 | $ 10,637.97 | |
| | 5 installments @ 1,494.84 | $ 7,474.20 | |
| | 12 installments @ 1,616.95 | $ 19,403.40 | |
| | 3 installments @ 1,739.06 | $ 5,217.18 | |
| | 7 installments @ 1,727.46 | + $ 12,092.22 | |
| | **Total installment payments due as of the petition date** | $ 74,147.15 | Copy total here ▶ (2) $ 74,147.15 |
| 3. **Calculation of cure amount** | **Add total prepetition fees, expenses, and charges** | | Copy total from Part 2 here ▶ + $ 8,034.95 |
| | **Subtract total of unapplied funds** (funds received but not credited to account) | | - $ 0.00 |
| | **Subtract amounts for which debtor is entitled to a refund** | | - $ 0.00 |
| | **Total amount necessary to cure default as of the petition date** | | (3) $ 82,182.10 |

Copy total onto Item 4 of Proof of Claim form

Post-Petition Payment Amount: $1,792.38 effective 6/1/2015;

The Post-Petition payment amount and escrow for taxes and insurance is $1,792.38. This payment comprises P&I of $1,404.27 and escrow in the amount of $388.11. Additional changes to the monthly payment amount may be required because of interest rate adjustments or escrow requirement changes.

Debtor(s) executed a promissory note (the Debt Agreement) secured by a mortgage or deed of trust or security deed. The Debt Agreement is made payable to Creditor or its successor. Creditor, or its successor, has possession of the Debt Agreement. Creditor, or its successor, is the original mortgagee or beneficiary of the mortgage or deed of trust or security deed.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
20955 PATHFINDER ROAD, SUITE 300, DIAMOND BAR, CA 91765.

A true and correct copy of the foregoing document entitled (*specify*): Proof of Claim

_____

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 09/21/2015 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge: Vincent P. Zurzolo,  U.S. Bankruptcy Court, Royal Federal Building, 255 East Temple St., Ste 1360 ,Los Angeles, CA, 90012
Debtor: Wanda Rozar, 28231 Canterbury Court, Valencia, CA 91354
Debtor: Wanda Rozar, 28231 Canterbury Ct, Valencia, CA 91354-1116
Debtor Attorney: William J. Smyth, 4929 Wilshire Blvd, Ste 690, Los Angeles, CA 90010
Trustee - Court: Nancy Curry, 1000 Wilshire Blvd, Suite 870, Los Angeles, CA 90017
Trustee - US: U. S. Trustee (Los Angeles), 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 21, 2015 | MARISOL A. NAGATA | /s/ MARISOL A. NAGATA |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

WORLD SAVINGS BANK, FSB

# FIXED RATE MORTGAGE NOTE

## PICK-A-PAYMENT℠ LOAN

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER ▮▮▮▮▮▮▮▮                    DATE  March 14, 2007

BORROWER(S)    WANDA F ROZAR, AN UNMARRIED WOMAN    sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS:  26231 CANTERBURY CT, VALENCIA, CA  91354-1118

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  $300,000.00 , called "Principal", plus interest, to the order of the Lender  The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred

### 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I will pay interest at the yearly rate of 6.800%  Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note



LENDER'S USE ONLY

**3. PAYMENTS**

   **(A)   Time and Place of Payments**
   I will pay Principal and interest by making payments every month

   I will make my monthly payments on the **1st day** of each month beginning on **May 1, 2007**. I will make these payments every month until I have paid all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument If, on **April 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender

   **(B)   Amount of My Initial Monthly Payments**
   Each of my initial monthly payments will be in the amount of U S $ **1,184.42** This amount will change as described in Sections 3(C) and 3(D) below  My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance

   **(C)   Payment Change Dates**
   My monthly payment will change as required by Section 3(D) below beginning on the **1st day** of **May, 2008** and on that day every **12th** month thereafter until the **121st** month, which will be the final payment change. Each of these dates is called a "Payment Change Date" My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount

   I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below

   **(D)   Calculation of Payment Changes**
   Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance together with interest, including any deferred interest as described in Section 3(E) below, by the Maturity Date  However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment  This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date

**THIS SPACE INTENTIONALLY LEFT BLANK**

(E)  Deferred Interest; Additions to My Unpaid Principal

From time to time, my monthly payments may be insufficient to pay the final amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment (Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

(G)  Final Payment Change

On the **10th** Payment Change Date my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply.

(H)  Notice of Payment Changes

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date.

## 4.  FAILURE TO MAKE ADJUSTMENTS

If for any reason Lender fails to make an adjustment to the payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

## 6.  MAXIMUM LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)  Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)  No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)  Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Lender a notice of my different address. I will give any notice to Lender by first class mail to Lender at a change in my address if I am given a notice of that different address.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by making it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument, dated the same date as this Note, gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**12. GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
WANDA F KOZAK



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE OF MERGER

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and complete copy of the certificate recorded in this Office, evidencing the merger of Wachovia Mortgage Corporation, Charlotte, North Carolina, with and into Well Fargo Bank, National Association, Sioux Falls, South Dakota, effective May 6, 2011.

IN TESTIMONY WHERE OF, I have

hereunto subscribed my name and caused

my seal of office to be affixed to these

presents at the Treasury Department, in the

City of Washington and District of

Columbia, today, May 17, 2011.



John Walsh

Acting Comptroller of the Currency



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

May 9, 2011

Mr. James E. Hanson
Senior Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to merge Wachovia Mortgage Corporation, Charlotte, North Carolina, into
       Wells Fargo Bank, National Association, Sioux Falls, South Dakota
       Application Control Number: 2011-ML-12-0088

Dear Mr. Hanson:

This letter is the official certification from the Office of the Comptroller of the Currency of the
merger of Wachovia Mortgage Corporation, Charlotte, North Carolina, with and into Wells
Fargo Bank, National Association, Sioux Falls, South Dakota, effective May 6, 2011.

Sincerely,

David Reilly
Large Bank Licensing Lead Expert



**Comptroller of the Currency**
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers: 2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national bank with the
name, Wells Fargo Bank Southwest, National Association, effective November 1, 2009. This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by e-mail at
Stephen.Lybarger@occ.treas.gov. Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

## SECRETARY'S AFFIDAVIT OF NAME CHANGE

STATE:

COUNTY:

I, **Billie Charles**, being a duly appointed and acting Assistant Secretary of Wachovia Mortgage, FSB, whose address is 4101 Wiseman Blvd., San Antonio, TX 78251 being first duly sworn on oath, deposes and says:

Effective December 31, 2007, World Savings Bank, FSB ("the Savings Bank") changed its name to Wachovia Mortgage, FSB as a result of an amendment to the charter and bylaws of the Savings Bank, which was accomplished in accordance with federal regulation as evidenced by the Notice of Amendment of Charter and Bylaws letter issued by the Office of Thrift Supervision ("OTS") (California), on November 19, 2007, and is on file in that office. A true and correct copy of that OTS letter is attached to this Affidavit as Exhibit "A".

_Billie Chl_
Assistant Secretary

State of Texas          §
County of Bexar         §

Before me, _JEANETTE DON-JENKINS_, a Notary Public, personally appeared _BILLIE CHARLES_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same under oath in his/her authorized capacity.

Given under my hand and seal of office this _15_ day of _November_, 20_08_

(Seal)

_Jeanette Don Jenkins_
Signature of Notary Public

JEANETTE DON-JENKINS
MY COMMISSION EXPIRES
September 27, 2011



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Sena Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta



**This page is part of your document - DO NOT DISCARD**

 **20070649988** Pages:
022

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/22/07 AT 08:00AM

Fee: 85.00
Tax: 0.00
Other: 0.00
Total: 85.00

**TitleCompany**

**TITLE(S) :**

L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

 **THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
TICOR TITLE COMPANY
BREA BRANCH

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: █████████

NOTE AMOUNT: $309,000.00

**20070649988**



FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $386,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
     **(A)  Security Instrument.** This Deed of Trust, which is dated **March 14, 2007,** will be called the "Security Instrument."

     **(B)  Borrower.** WANDA F ROZAR, AN UNMARRIED WOMAN sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C)  Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States Lender's address is **1901 Harrison Street, Oakland, CA 94612** .



LENDER'S USE ONLY

CA

SD001A (2004-03-3)
DEFERRED INTEREST                                    Page 1

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$309,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **April 1, 2037** ("Maturity Date")

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The Property which is located at **28231 CANTERBURY CT, VALENCIA, CA 91354-1118.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

5

(B)   **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender I may choose the insurance company but my choice is subject to Lender's approval Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender Lender will have the right to hold the policies and renewals If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6. **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2024-03-3)

CA



## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 28231 CANTERBURY CT, VALENCIA, CA 91354-1118. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15. GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16. BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                      CA

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD091K (2004-03-3)                                                                                                          CA

*13*

## 26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

   **Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

   If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**THIS SPACE INTENTIONALLY LEFT BLANK.**

## 27.   SUBSTITUTION OF TRUSTEE

   I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

**28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it

**29. RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30. STATEMENT OF OBLIGATION**

Lender may collect a fee of $60 00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.


**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**


**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**


SD001N (2004-03-3)    [N01 (2006-08-1)]                                      CA

*16*

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____ (Seal)
WANDA F ROZAR

Condominium Rider Attached

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-63-1)     [AFf (2004-63-1)]     Page 15     CA
                      [B01 (2004-63-1)]

*17*

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of    California

County of    Los Angeles

On MAR 16, 2007    before me, WALDOH/NN, Notary Public
                    DATE                              NAME, TITLE OF OFFICER-

personally appeared    WANDA F. ROZAR
                       NAME(S) OF SIGNER(S)

☐ Personally known to me   OR ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

SIGNATURE OF NOTARY

> WALDOH H PINN
> COMM # 1666207
> NOTARY PUBLIC - CALIFORNIA
> LOS ANGELES COUNTY
> MY COMM. EXPIRES MAY 17, 2010

---

**OPTIONAL**

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

| CAPACITY CLAIMED BY SIGNED | DESCRIPTION OF ATTACHED DOCUMENT |
|---|---|
| ☐ INDIVIDUAL | |
| ☐ CORPORATE OFFICER | TITLE OR TYPE OF DOCUMENT |
| _____ TITLE(S) | |
| ☐ PARTNER(S)   ☐ LIMITED ☐ GENERAL | |
| ☐ ATTORNEY-IN-FACT | NUMBER OF PAGES |
| ☐ TRUSTEE(S) | DATE OF DOCUMENT |
| ☐ GUARDIAN/CONSERVATOR | |
| ☐ OTHER: _____ | |
| | SIGNER(S) OTHER THAN NAMED ABOVE |
| SIGNER IS REPRESENTING: | |

18

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO. ███████████

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **LOS ANGELES** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/18TH INTEREST IN AND TO THE COMMON AREA MODULE CA-6, AS SHOWN ON THE CONDOMINIUM PLAN RECORDED MAY 22, 2001 AS INSTRUMENT NO. 01-869666, AFFECTING TRACT NO. 46389-17, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1244 PAGES 87 AND 88 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

PARCEL 2:

UNIT 116, AS SHOWN UPON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE.

PARCEL 3:

AN EXCLUSIVE EASEMENTS FOR USE OVER THAT CERTAIN EXCLUSIVE USE PROPERTY, DESCRIBED AND IDENTIFIED UPON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE AS DECK/PATIO, WHICH EXCLUSIVE USE PROPERTY IS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

PARCEL 4:

A NON-EXCLUSIVE EASEMENT ON AND OVER THE ASSOCIATION PROPERTY DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR VILLAGE WALK MAINTENANCE CORPORATION, RECORDED JUNE 22, 2000 AS INSTRUMENT NO. 00-960471, AND ANY AMENDMENTS THERETO, FOR ACCESS, USE, ENJOYMENT, INGRESS AND EGRESS TO THE AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION. THIS EASEMENT IS APPURTENANT TO PARCELS 1 AND 2 ABOVE.

PARCEL 5:

EASEMENTS FOR ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE, ACCESS, INGRESS AND EGRESS, USE AND ENJOYMENT AS SAID EASEMENTS ARE SET FORTH IN THE DECLARATION.

SD001 (2003-03-2) [GF420A1]                    Page 16 of 16                    CA

Approved July 20, 2009, 14:57:12 CDT A489675

Date of this Agreement:      June 17, 2009
Note known as Loan Number: ▇▇▇▇▇▇▇▇
Property Address:          28231 CANTERBURY CT
                       VALENCIA, CA 91354

Existing Principal Balance:   $ 325,626.27
Return Date for this Agreement: June 27, 2009

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement") is made as of the date above between the undersigned ("Borrower"), as obligor(s) on the Loan described above or as title holder(s) to the Property, as the context may require, and Wachovia Mortgage, FSB ("Lender"). Borrower agrees that, except as expressly modified in this Agreement, the Note and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

Unless this Agreement is executed without alteration and returned by the Return Date above this Agreement will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Note and Security Instrument. This Agreement will only be deemed received when <u>actually</u> received by Lender at: Wachovia Mortgage, Loan Modifications, TX1351, PO Box 659558, San Antonio, Texas, 78265-9558.

1. If outstanding and owed as of the Date of this Agreement, Lender agrees to:
a. Waive all outstanding Late Charge and Return Check Fees on the Loan; and
b. Add amounts owed for "Escrow Amounts Advanced," "Foreclosure Fees," "Attorney's Fees," and "Property Inspection Fees" to the Loan balance.

2. Lender and Borrower further agree to modify the Loan as follows:
a. Forgive accrued, outstanding, and not capitalized interest through     June 30, 2009
b. The balance owed on the Loan will be                      $ 293,063.64
c. The maturity date of the Loan is                     July 1, 2049
d. The <u>Interest Only</u> payment(s) on the Loan will be as follows:

| Payment Due Date | Payment (Interest Only) | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 08/01/2009 | $ 793.72 | 3.250% | 07/01/2009 |
| 08/01/2010 | $ 915.83 | 3.750% | 07/01/2010 |
| 08/01/2011 | $ 1,037.94 | 4.250% | 07/01/2011 |
| 08/01/2012 | $ 1,160.05 | 4.750% | 07/01/2012 |
| 08/01/2013 | $ 1,282.16 | 5.250% | 07/01/2013 |
| 08/01/2014 | $ 1,404.27 | 5.750% | 07/01/2014 |

e. <u>Principal and Interest</u> Payment for the remaining term of the Loan:

| | | | |
|---|---|---|---|
| 08/01/2015 | $ 1,784.35 | 6.500% | 07/01/2015 |

LoanNumber: ▇▇▇▇▇▇▇▇

Mail Workflow
JUN 1 9 2009

Monthly payments will be due on the same day of each month. Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date. **The payments above DO NOT include amounts necessary for escrow.** Each Payment under 2(d) is an interest only payment calculated at the interest rate specified. The payment under 2(e) is the principal and interest payment for the remainder of the term calculated at the interest rate specified.

3. The Interest Change Dates, Calculation of Interest Rate Changes, Payment Change Dates, Calculation of Payment Changes, Index and Payment Cap Limitation no longer apply.

4. The Loan may not be assumed by any other person or entity.

5. If a biweekly loan, the Loan will convert to a monthly payment schedule. References to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

6. Lender acknowledges that one or more of the undersigned may have filed for bankruptcy or may have received a discharge in a bankruptcy proceeding. Said individual(s) acknowledge and agree that this Agreement is not a reaffirmation agreement as defined in 11 U.S.C. §524, that any references in this Agreement that imply liability under the Note obligation instead refer to the amounts secured by the property and is not meant to impart personal liability on such individual(s), and that this Agreement and communications related to this Agreement are not attempts to collect, assess or recover a claim against the individual(s) that arose before the commencement of the bankruptcy or that has been discharged.

Borrower agrees that (a) Borrower has read this Agreement in its entirety; (b) Borrower has consulted, or had opportunity to consult, with an attorney of Borrower's choosing; and (c) Borrower has voluntarily entered into this Agreement.

BORROWER(S):

**WANDA F ROZAR**

Wachovia Mortgage FSB

**Mary C. Reeder**
**Senior Vice President**

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

ANALYSIS DATE:

05/19/2015

**WANDA F ROZAR**                          916
28231 CANTERBURY CT
VALENCIA CA 91354-1118

LOAN NUMBER:

PROPERTY ADDRESS:

28231 CANTERBURY CT
VALENCIA CA 91354

### YOUR HOME LOAN PAYMENT MAY BE CHANGING - THIS STATEMENT WILL HELP YOU UNDERSTAND WHY

This annual disclosure statement is required by Federal law and provides a detailed summary of activity related to your escrow account. At your request, we maintain an escrow account that is used to pay items such as your property taxes, insurance premiums, and/or mortgage insurance. If you have questions about this statment, please refer to the enclosed guide.

### 1  YOUR HOME LOAN PAYMENT

This section provides a breakdown of both your current and new payments, including the minimum payment, total escrow payment, and repayment of any shortage that may exist (or credit for an overage of less than $50). **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated. If your loan is an adjustable rate mortgage, an additional payment change may occur on the anniversary of your loan.  Refer to your billing statement for additional payment options.**

|  | NEW MONTHLY HOME LOAN PAYMENT | CURRENT MONTHLY HOME LOAN PAYMENT |
|---|---|---|
| Minimum Payment | $1,404.27 | $915.83 |
| **Escrow Payment** | $388.11 | $359.66 |
| Shortage Payment or Overage Credit | $.00 | $.00 |
| Optional Product(s) Payment | $.00 | $.00 |
| Other | $.00 | $.00 |
| **TOTAL MONTHLY PAYMENT** | $1,792.38 | $1,275.49 |
| **NEW PAYMENT EFFECTIVE DATE** | 06/01/15 | |

### 2  ESCROW OVERAGE

If the overage amount is greater than $50, a refund check is attached below, provided your loan is current.  Here are several options you may wish to consider:

- Your loan has $0.00 in deferred interest. You may use the escrow overage to reduce your deferred interest. This interest payment may be tax deductible (please consult your tax advisor).

- You may use the escrow overage to reduce your principal balance.

- You may deposit the funds to your escrow account if you anticipate higher tax or insurance amounts for the coming year.

If the overage amount is $50 or less, we have reduced your new monthly loan payment accordingly, provided your loan is current.

### 3  ANTICIPATED ESCROW ACCOUNT DISBURSEMENT AND NEW ESCROW PAYMENT AMOUNTS FOR THE NEXT 12 MONTHS

This section shows the property tax amount and/or insurance premiums we anticipate we will collect for and pay on your behalf during the next 12 months. The dollar amount shown may reflect the last amount actually paid for each item or we may project the next amount due as allowed by Federal law (See Section 5 for an explanation of escrow projection).  Insurance and tax payments are disbursed before their due date to allow for mailing and processing time at the tax office or insurance company.

| ESCROW ITEM | YEARLY DISBURSEMENT AMOUNT | NEW MONTHLY ESCROW PAYMENT AMOUNT |
|---|---|---|
| *Mortgage Insurance* | $0.00 | $0.00 |
| *Taxes* | $4,657.30 | $388.11 |
| *Insurance* | $0.00 | $0.00 |
| **TOTAL PAYMENTS FROM ESCROW** | $4,657.30 | $388.11 |

Your new monthly escrow payment amount is calculated by dividing the yearly disbursement amount over 12 payments.

A check may not have been generated because of one or more of the following conditions:

- The overage amount is $50 or less

- The projected overage overdraws the escrow account

- The loan is past due

- The loan is in bankruptcy

- The loan is pending payoff

- No overage or shortage exists

- The overage is equal to $10,000 or greater (check sent under separate cover)

- Other

**4  IMPORTANT INFORMATION**

Should you have any questions or need additional information, please contact our Customer Service Center at 800-642-0257, extension 33676. A representative is available to assist you Monday through Friday, 8:00 a.m. to 8:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m., Central Time.

This statement is for informational purposes only.  Please be advised that Wells Fargo Home Mortgage may be attempting to collect a debt. If you are currently in bankruptcy or your debt has been discharged in bankruptcy, Wells Fargo Home Mortgage is exercising its right against the property and is not attempting to hold you personally liable on the Note.

**5  YOUR ESCROW ACCOUNT PROJECTION FOR THE NEXT 12 MONTHS**

This section lists a 12 month running escrow balance to determine the appropriate target balance and to determine if a shortage or overage exists. All anticipated payments into escrow and disbursements from escrow are included along with the projected escrow account balance, derived by carrying forward your current actual escrow balance.  **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated.**

| | PAYMENTS INTO ESCROW | | DISBURSEMENTS FROM ESCROW | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|
| MONTH/ YEAR | PROJECTED | MORTGAGE INS | PROPERTY TAXES | FLOOD INS | HAZARD INS | OTHER INS | PROJECTED | REQUIRED |
| | | | | | | | $5617.44- | $776.20 |
| 06/15 | $388.11 | | | | | | $5229.33- | $1164.31 |
| 07/15 | $388.11 | | | | | | $4841.22- | $1552.42 |
| 08/15 | $388.11 | | | | | | $4453.11- | $1940.53 |
| 09/15 | $388.11 | | | | | | $4065.00- | $2328.64 |
| 10/15 | $388.11 | | | | | | $3676.89- | $2716.75 |
| 11/15 | $388.11 | | $2328.65 | | | | $5617.43- | $776.21 |
| 12/15 | $388.11 | | | | | | $5229.32- | $1164.32 |
| 01/16 | $388.11 | | | | | | $4841.21- | $1552.43 |
| 02/16 | $388.11 | | | | | | $4453.10- | $1940.54 |
| 03/16 | $388.11 | | $2328.65 | | | | $6393.64- | $0.00 |
| 04/16 | $388.11 | | | | | | $6005.53- | $388.11 |
| 05/16 | $388.11 | | | | | | $5617.42- | $776.22 |
| TOTAL | $4657.32 | | $4657.30 | | | | | |

Wells Fargo Home Mortgage does not collect or require a cushion in your escrow account. We require that your escrow balance be $.00 at the end of March 2016. We project your escrow account balance will be $6,393.64- at that time. This means you have an shortage of $6,393.64-. This shortage amount has been adjusted to $0.00 as it assumes the pre-bankruptcy escrow shortage of $6,393.64 will be cured through the bankruptcy plan. Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

**6  YOUR ESCROW ACCOUNT HISTORY FOR THE PAST 12 MONTHS**

The following is a statement of actual activity in your escrow account from 11/14  through 05/15 .  The information below provides a summary of what we projected would occur compared to what actually occurred in your escrow account.

| | PAYMENTS INTO ESCROW | | DISBURSEMENTS FROM ESCROW | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| MONTH/ YEAR | PROJECTED | ACTUAL | PROJECTED | ACTUAL | DESCRIPTION | PROJECTED | ACTUAL |
| | | | | | | $2262.35 | $17942.26- |
| 11/14 | $323.19 | * | $1939.15 | $2328.65 * | COUNTY TAXES | $646.39 | $20270.91- |
| 12/14 | $323.19 | * | | | | $969.58 | $20270.91- |
| 01/15 | $323.19 | $471.13 * | | | | $1292.77 | $19799.78- |
| 02/15 | $323.19 | * | | | | $1615.96 | $19799.78- |
| 03/15 | $323.19 | * | $1939.15 | $2328.65 * | COUNTY TAXES | $0.00 | $22128.43- |
| 04/15 | $323.19 | * | | | | $323.19 | $22128.43- |
| 05/15 | $323.19 | $16510.99 * | | | | $646.38 | $5617.44- |
| 06/15 | $323.19 | * | | | | $969.57 | $0.00 |
| 07/15 | $323.19 | * | | | | $1292.76 | $0.00 |
| 08/15 | $323.19 | * | | | | $1615.95 | $0.00 |
| 09/15 | $323.19 | * | | | | $1939.14 | $0.00 |
| 10/15 | $323.19 | * | | | | $2262.33 | $0.00 |
| TOTAL | $3878.28 | $16982.12 | $3878.30 | $4657.30 | | | |

* - An asterisk (*) shows a difference between what actually occurred and what was anticipated. A difference can be due to an increase or decrease in the amount of an escrow bill or due to the disbursement of funds on a date other than originally anticipated.

**E**- The letter "E" beside an amount indicates the payment or disbursement has not yet occurred but is estimated to occur as shown.

During this period, an additional $0.00 was deposited into your escrow account for interest on escrow.

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

ANALYSIS DATE:

08/21/2014

**WANDA F ROZAR**                    3154         LOAN NUMBER:
28231 CANTERBURY CT
VALENCIA CA 91354-1118

PROPERTY ADDRESS:

28231 CANTERBURY CT
VALENCIA CA 91354

### YOUR HOME LOAN PAYMENT MAY BE CHANGING - THIS STATEMENT WILL HELP YOU UNDERSTAND WHY

This annual disclosure statement is required by Federal law and provides a detailed summary of activity related to your escrow account. At your request, we maintain an escrow account that is used to pay items such as your property taxes, insurance premiums, and/or mortgage insurance. If you have questions about this statment, please refer to the enclosed guide.

### 1  YOUR HOME LOAN PAYMENT

This section provides a breakdown of both your current and new payments, including the minimum payment, total escrow payment, and repayment of any shortage that may exist (or credit for an overage of less than $50). **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated. If your loan is an adjustable rate mortgage, an additional payment change may occur on the anniversary of your loan.  Refer to your billing statement for additional payment options.**

|  | NEW MONTHLY HOME LOAN PAYMENT | CURRENT MONTHLY HOME LOAN PAYMENT |
|---|---|---|
| Minimum Payment | $1,404.27 | $915.83 |
| Escrow Payment | $323.19 | $359.66 |
| Shortage Payment or Overage Credit | $.00 | $.00 |
| Credit Life and/or Disability Payment | $.00 | $.00 |
| Other | $.00 | $.00 |
| **TOTAL MONTHLY PAYMENT** | **$1,727.46** | **$1,275.49** |
| **NEW PAYMENT EFFECTIVE DATE** | **11/01/14** | |

### 2  ESCROW OVERAGE

If the overage amount is greater than $50, a refund check is attached below, provided your loan is current. Here are several options you may wish to consider:

- Your loan has $0.00 in deferred interest. You may use the escrow overage to reduce your deferred interest. This interest payment may be tax deductible (please consult your tax advisor).

- You may use the escrow overage to reduce your principal balance.

- You may deposit the funds to your escrow account if you anticipate higher tax or insurance amounts for the coming year.

If the overage amount is $50 or less, we have reduced your new monthly loan payment accordingly, provided your loan is current.

### 3  ANTICIPATED ESCROW ACCOUNT DISBURSEMENT AND NEW ESCROW PAYMENT AMOUNTS FOR THE NEXT 12 MONTHS

This section shows the property tax amount and/or insurance premiums we anticipate we will collect for and pay on your behalf during the next 12 months. The dollar amount shown may reflect the last amount actually paid for each item or we may project the next amount due as allowed by Federal law (See Section 5 for an explanation of escrow projection).  Insurance and tax payments are disbursed before their due date to allow for mailing and processing time at the tax office or insurance company.

| ESCROW ITEM | YEARLY DISBURSEMENT AMOUNT | NEW MONTHLY ESCROW PAYMENT AMOUNT |
|---|---|---|
| *Mortgage Insurance* | $0.00 | $0.00 |
| *Taxes* | $3,878.30 | $323.19 |
| *Insurance* | $0.00 | $0.00 |
| **TOTAL PAYMENTS FROM ESCROW** | $3,878.30 | $323.19 |

Your new monthly escrow payment amount is calculated by dividing the yearly disbursement amount over 12 payments.

A check may not have been generated because of one or more of the following conditions:

- The overage amount is $50 or less
- The projected overage overdraws the escrow account
- The loan is past due
- The loan is in bankruptcy
- The loan is pending payoff
- No overage or shortage exists
- The overage is equal to $10,000 or greater (check sent under separate cover)
- Other

**4** **IMPORTANT INFORMATION**

Should you have any questions or need additional information, please contact our Customer Service Center at 800-642-0257, extension 33676. A representative is available to assist you Monday through Friday, 8:00 a.m. to 8:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m., Central Time.

This statement is for informational purposes only. Please be advised that Wells Fargo Home Mortgage may be attempting to collect a debt. If you are currently in bankruptcy or your debt has been discharged in bankruptcy, Wells Fargo Home Mortgage is exercising its right against the property and is not attempting to hold you personally liable on the Note.

**5** **YOUR ESCROW ACCOUNT PROJECTION FOR THE NEXT 12 MONTHS**

This section lists a 12 month running escrow balance to determine the appropriate target balance and to determine if a shortage or overage exists. All anticipated payments into escrow and disbursements from escrow are included along with the projected escrow account balance, derived by carrying forward your current actual escrow balance. **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated.**

| | PAYMENTS INTO ESCROW | | DISBURSEMENTS FROM ESCROW | | | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|---|---|
| MONTH/YEAR | PROJECTED | | MORTGAGE INS | PROPERTY TAXES | FLOOD INS | HAZARD INS | OTHER INS | | PROJECTED | REQUIRED |
| | | | | | | | | | $3693.60- | $2262.35 |
| 11/14 | $323.19 | | | $1939.15 | | | | | $5309.56- | $646.39 |
| 12/14 | $323.19 | | | | | | | | $4986.37- | $969.58 |
| 01/15 | $323.19 | | | | | | | | $4663.18- | $1292.77 |
| 02/15 | $323.19 | | | | | | | | $4339.99- | $1615.96 |
| 03/15 | $323.19 | | | $1939.15 | | | | | $5955.95- | $0.00 |
| 04/15 | $323.19 | | | | | | | | $5632.76- | $323.19 |
| 05/15 | $323.19 | | | | | | | | $5309.57- | $646.38 |
| 06/15 | $323.19 | | | | | | | | $4986.38- | $969.57 |
| 07/15 | $323.19 | | | | | | | | $4663.19- | $1292.76 |
| 08/15 | $323.19 | | | | | | | | $4340.00- | $1615.95 |
| 09/15 | $323.19 | | | | | | | | $4016.81- | $1939.14 |
| 10/15 | $323.19 | | | | | | | | $3693.62- | $2262.33 |
| TOTAL | $3878.28 | | | $3878.30 | | | | | | |

Wells Fargo Home Mortgage does not collect or require a cushion in your escrow account. We require that your escrow balance be $.00 at the end of March 2015. We project your escrow account balance will be $5,955.95- at that time. This means you have an shortage of $5,955.95-. This shortage amount has been adjusted to $220.35 as it assumes the pre-bankruptcy escrow shortage of $6,176.30 will be cured through the bankruptcy plan. Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

**6** **YOUR ESCROW ACCOUNT HISTORY FOR THE PAST 12 MONTHS**

The following is a statement of actual activity in your escrow account from 03/13 through 10/14 . The information below provides a summary of what we projected would occur compared to what actually occurred in your escrow account.

| | PAYMENTS INTO ESCROW | | | DISBURSEMENTS FROM ESCROW | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|
| MONTH/YEAR | PROJECTED | ACTUAL | | PROJECTED | ACTUAL | DESCRIPTION | PROJECTED | ACTUAL |
| | | | | | | | $334.79- | $12774.56- |
| 03/13 | $334.79 | * | | | $2008.71 * | COUNTY TAXES | $0.00 | $14783.27- |
| 04/13 | $334.79 | * | | | | | $334.79 | $14783.27- |
| 05/13 | $334.79 | * | | | | | $669.58 | $14783.27- |
| 06/13 | $334.79 | * | | | | | $1004.37 | $14783.27- |
| 07/13 | $334.79 | $359.66 * | | | | | $1339.16 | $14423.61- |
| 08/13 | $334.79 | $359.66 * | | | | | $1673.95 | $14063.95- |
| 09/13 | $334.79 | * | | | | | $2008.74 | $14063.95- |
| 10/13 | $334.79 | * | | | | | $2343.53 | $14063.95- |
| 11/13 | $334.79 | * | | $2008.71 | $1939.16 * | COUNTY TAXES | $669.61 | $16003.11- |
| 12/13 | $334.79 | * | | | | | $1004.40 | $16003.11- |
| 01/14 | $334.79 | * | | | | | $1339.19 | $16003.11- |
| 02/14 | $334.79 | * | | | | | $1673.98 | $16003.11- |
| 03/14 | | | | | $1939.15 * | COUNTY TAXES | $1673.98 | $17942.26- |
| 08/14 | | $13579.08 * | | | | | $1673.98 | $4363.18- |
| 09/14 | | $334.79 * | | | | | $1673.98 | $4028.39- |
| 10/14 | | $334.79 * | | | | | $1673.98 | $3693.60- |
| TOTAL | $4017.48 | $14967.98 | | $2008.71 | $5887.02 | | | |

* - An asterisk (*) shows a difference between what actually occurred and what was anticipated. A difference can be due to an increase or decrease in the amount of an escrow bill or due to the disbursement of funds on a date other than originally anticipated.

**E**- The letter "E" beside an amount indicates the payment or disbursement has not yet occurred but is estimated to occur as shown.

During this period, an additional $0.00 was deposited into your escrow account for interest on escrow.

# EXHIBIT 3



<table>
<tr><td colspan="2"><strong>Account Information</strong></td></tr>
<tr><td>Online:</td><td>Wellsfargo.com</td></tr>
<tr><td>Fax:</td><td>1-866-969-0103</td></tr>
<tr><td>Telephone:</td><td>1-866-234-8271</td></tr>
<tr><td>Correspondence:</td><td>PO Box 10335<br>Des Moines, IA 50306</td></tr>
<tr><td>Hours of Operation:</td><td>Mon-Thu, 7:00 AM– 9:00 PM<br>Fri, 7:00 AM – 8:00 PM<br>Sat, 8:00 AM – 4:00 PM<br>Central Time</td></tr>
<tr><td>Loan Number:</td><td>0483128385</td></tr>
<tr><td>Property Address:</td><td>28231 CANTERBURY CT<br>VALENCIA, CA 91354-1118</td></tr>
</table>

04/10/2017

Wanda F Rozar
28231 CANTERBURY CT
VALENCIA, CA 91354-1118

PLEASE NOTE:  This notice is being provided for informational purposes only.  As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo Home Mortgage  is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge.  THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).
Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary.  You are not obligated to pursue any workout options discussed with us.  At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

Subject:    Notice of short sale status on your mortgage
            Projected closing date: 06/09/2017

Dear Wanda F Rozar:

We're writing to let you know that we have conditionally approved you for a short sale on the property referenced above.  The following notice of short sale approval will provide all of the conditions and requirements that must be met before the short sale transaction can be finalized.

**What you need to know about a short sale**
With a short sale, you may have the option to sell your home for less than the amount owed on your mortgage.  By doing this, you will be released from your obligation to pay back your primary mortgage under its original terms.  And as your mortgage servicer, Wells Fargo Home Mortgage will accept the proceeds of the sale as payment in full.

As the homeowner, you may be able to:
- Avoid a foreclosure sale
- Stay in your home until the new owner closes, giving you time to make other living arrangements
- Pay no fees — all closing costs and real estate agent fees will be paid by Wells Fargo Home Mortgage
- Eliminate your loan debt

**Conditions you must meet to complete a short sale**
Your short sale approval is based on the purchase contract between Wanda F Rozar, the seller(s), and BRYAN GENESSE, BROOKE GENESSE, the buyer(s), for a purchase price of $322,000.00. The minimum amount we must receive for the sale of the property after all deductions have been made is called the **acceptable net sale proceeds amount**. The terms of our approval and instructions to you and your closing agent are as follows:

**Section one — transaction overview**
1. The acceptable net sale proceeds amount is $306,175.33.

2. The following transaction details summarize the information noted above:

| | |
|---|---|
| Approved purchase price: | $322,000.00 |
| Acceptable net sale proceeds amount: | $306,175.33 |
| Borrower payment: | |
| Cash at closing: | $0.00 |

**Section two — approved seller closing costs**
Approved Seller Closing Costs:

| | |
|---|---|
| Real Estate Commission: | $9,600.00 |
| TITLE AND ESCROW | $1,700.00 |
| TAXES | $4,098.67 |
| OTHER | $426.00 |

Excess funds, if any, must be paid to Wells Fargo Home Mortgage

**Section three — before we can finalize your short sale**
- Acknowledge and waive any and all rights to any escrow balance, insurance proceeds, or refunds from prepaid expenses.

- You, or any other party, cannot receive any sale proceeds or any funds as a result of this transaction except as specified in this notice.

- The purchase contract may not be amended without Wells Fargo Home Mortgage prior written approval.

- Ensure that any relationship among a participating broker/real estate agent has been disclosed prior to issuing this notice of short sale approval (unless the property is secured by a VA loan). This transaction may not close if it involves any third party who received a deed from the borrower/seller at, before, or after closing, and the purchase contract may not be assigned.

  In addition, the sale must be an "arm's length transaction". This means the parties to the transaction (buyer, seller, and their respective agents) cannot have a close personal or business relationship. Also, the buyer and seller, and/or any agent of the buyer or seller, cannot knowingly misrepresent the fair market value of the property during this sale/purchase of the property. Any knowing violation of the arm's length transaction requirement or misrepresentation of the fair market value may cause this approval to be void and Wells Fargo Home Mortgage may pursue available remedies at law.

- If you have any home equity loans, lines, junior liens or other subordinate liens (like a tax or mechanic's lien) on your property, they will be considered separately from your transaction. To ensure the short sale proceeds smoothly, it is essential for you to begin working with any other creditors immediately after being approved for a short sale. If you do not resolve transactions with other lien holders it could cause delays or even cancelation of the short sale closing.

- All parties to the transaction must agree to the conditions of the short sale affidavit. If any party of the transaction does not agree to the conditions of the short sale affidavit and complete the document as allowed by applicable law, this notice of approval will be null and void. The short sale affidavit must be completed and returned to Wells Fargo Home Mortgage prior to the closing date. This affidavit can be sent by fax or mail:

  Fax:   1-866-969-0103

  Mail:  Wells Fargo Home Mortgage
         1000 Blue Gentian Road, Suite 300
         MAC X9999-01N
         Eagan, MN 55121

- If you're involved in a bankruptcy, please understand that additional court consent may be needed, if consent is not provided it may prevent us from completing the short sale. If you have questions, please consult with your bankruptcy attorney.

- This notice of short sale approval is contingent upon confirming that BRYAN GENESSE, BROOKE GENESSE meet any required re-sale deed restrictions defined by the mortgage or deed of trust for the above mentioned property.

- If you do not comply with any of the conditions/requirements included in this notice, it results in our refusal to issue a satisfaction, release, or conveyance of your mortgage.

- In accordance with state and local laws, this conditional approval may be voided at any time (at the discretion of Wells Fargo Home Mortgage).

- You, as the seller, must advise your closing agent that they must contact us no later than 48 hours before the scheduled closing date and provide a copy of the final closing disclosure. The final closing disclosure must comply with the approval terms included in this notice and must contain complete buyer and seller information, including a forwarding address for the seller. In addition, the closing agent must provide the fully executed HUD Closing Worksheet for FHA loans. If closing is delayed and/or rescinded, we must be notified immediately to review the request and provide written approval, if granted per investor or mortgage insurance guidelines.

- In addition, you as the seller, for and in consideration of the approval, closing, and funding of the short sale, agree that you will re-sign any documents after closing if any corrections are needed. These corrections may be due to any typographical or clerical errors discovered in any or all of the closing documentation required to be signed at the time of closing.

- The acceptable net sales proceeds, together with any excess funds, must be wired to:
  Wells Fargo Home Mortgage
  Account No.: 6581202097
  ABA No.: 121000248
  Special Information for Beneficiary:
  Apply funds to loan:  708, 0483128385
  From: Sender's name, phone number

  Please note: The above information is mandatory and if not provided, the wire will be rejected.

- After certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision.

- The closing documents should be faxed to 1-866-969-0103 on the closing date.

# **EXHIBIT 4**



# JEAN ALLEN ESCROW CO., INC.

3341 CERRITOS AVENUE
LOS ALAMITOS, CALIFORNIA 90720
(562) 799-3344 • FAX (562) 799-3345

**MASTER FINAL SETTLEMENT STATEMENT**

**PROPERTY:** 28231 Canterbury Court
Santa Clarita (Valencia Area), CA 91354

**BUYER:** Bryan Genesse and Brooke Genesse

**CLOSING DATE:** May 31, 2017

**SELLER:** Wanda F. Rozar

**ESCROW NO.:** 14169

| | SELLER | | | BUYER | |
|---|---|---|---|---|---|
| **DEBITS** | **CREDITS** | | | **DEBITS** | **CREDITS** |
| | | **FINANCIAL CONSIDERATION** | | | |
| | 322,000.00 | Total Consideration | | 322,000.00 | |
| | | Deposit from Bryan Genesse | | | 10,000.00 |
| | | Deposit from Brooke T. Genesse | | | 79,200.00 |
| | | New 1st Trust Deed - Skyline Financial Corp. | | | 257,600.00 |
| | | **PAYOFF CHARGES - Wells Fargo Home Mortgage** | | | |
| | | **[Total Payoff $307,863.79]** | | | |
| 307,863.79 | | Principal Balance | | | |
| | | **PAYOFF CHARGES - Richardson Harman Ober PC Attorney-Client Trust** | | | |
| | | **[Total Payoff $12,435.00]** | | | |
| | | Principal Balance | | 12,435.00 | |
| | | **LOAN INFORMATION - Skyline Financial Corp.** | | | |
| | | **[Charges $3,422.96]** | | | |
| | | Origination Charge | | 270.48 | |
| | | Appraisal Fee POC (B*) to Above All Appraisal $435.00 | | | |
| | | Administration Fee | | 1,495.00 | |
| | | Appraisal Re-Inspection Fee | | 150.00 | |
| | | Aggregate Reserves | | -329.20 | |
| | | Interest at $30.4111/day from 05/30/2017 to 06/01/2017 | | 60.82 | |
| | | Homeowner's Insurance @ $32.92/mo for 3 mos | | 98.76 | |
| | | Property Taxes @ $335.42/mo for 5 mos | | 1,677.10 | |
| | | **PRORATIONS/ADJUSTMENTS** | | | |
| | 439.99 | 2nd Half 2016-17 Taxes at $2639.95/semi-annually from 05/31/2017 to 07/01/2017 | | 439.99 | |
| | | **COMMISSION CHARGES** | | | |
| 11,270.00 | | F.A.I.R. Plan Inc. | | | |
| | | Balboa Real Estate | | 597.00 | |
| | | **H.O.A./MANAGEMENT** | | | |
| | | HOA Dues for June to Village Walk Maintenance Corporation | | 270.00 | |
| | | Parking Passes/Keys to Village Walk Maintenance Corporation | | 180.00 | |
| | | Document Fee(s) - Reimbursement to Jean Allen Escrow Co., Inc. | | 543.00 | |
| | | **OTHER DEBITS/CREDITS** | | | |
| | | Allstate Insurance Company for Insurance | | 395.00 | |
| | | Solutions For Property for Property Disclosure Report | | 119.95 | |
| | | First American Home Buyers Protection for Home Warranty Policy | | 495.00 | |
| | | Jean Allen Escrow Co., Inc. for Reimbursement of Insurance Service Fee | | 103.20 | |
| | | William Wilmarth & Associates for Short Sale Negotiator Fee | | 3,220.00 | |
| | | **TITLE/TAXES/RECORDING CHARGES - Title 365** | | | |
| 1,252.00 | | Title - Owner's Title Insurance | | | |
| | | Title - Lender's Title Insurance | | 478.00 | |
| | | Title - eRecording Fee | | 10.00 | |
| | | Title - Sub Escrow Fee | | 125.00 | |
| | | Title - Wire Fee | | 50.00 | |

Closing Date:  May 31, 2017                                                    Escrow No.:  14169
Date:  May 31, 2017

Page 2 of 2:

|  |  | Title - Endorsement Fee | 75.00 |  |
|  |  | Recording Grant Deed | 25.00 |  |
|  |  | Recording Trust Deed | 73.00 |  |
| 354.20 |  | Transfer Tax - County to Los Angeles County |  |  |
|  |  | **ESCROW CHARGES - Jean Allen Escrow Co., Inc.** |  |  |
| 1,700.00 |  | Title - Escrow Fee | 1,000.00 |  |
|  |  | Title - Email Loan Doc. Fee | 125.00 |  |
|  |  | Title - Notary Fee to MAC Settlement Services | 250.00 |  |
|  |  | Title - Overnight Delivery Fee | 31.71 |  |
|  |  | **Net Proceeds** |  |  |
|  |  | **Total Refund** | 336.19 |  |
| $  322,439.99 | $  322,439.99 | **TOTAL** | $  346,800.00 | $  346,800.00 |

.

# EXHIBIT 5

**This page is part of your document - DO NOT DISCARD**



## 20170727041



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/29/17 AT 01:20PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201706292900043

**00013911642**



008425417

**SEQ:**
**02**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**

E039236

Recording Requested By:
WELLS FARGO HOME MORTGAGE

When Recorded Return To:
Current Trustor:
WANDA F ROZAR
28231 CANTERBURY CT
VALENCIA, CA  91354

Document Number:13911642

Batch Number:8425417

### FULL RECONVEYANCE

WFHM - CLIENT 708 #:0483128385 "ROZAR"  Lender ID:03A146/0483128385  Los Angeles, California

WELLS FARGO BANK, N.A. as present Trustee for the Deed of Trust executed by WANDA F ROZAR as Trustor(s),
Dated:  03/14/2007 Recorded:  03/22/2007  in Book: N/A Page: N/A as Instrument No.: 20070649988 of official
Records in the office of the County Recorder of  Los Angeles, California having been requested in writing, by the
holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of
Trust, does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title
and interest acquired by Trustee under said Deed of Trust.

IN WITNESS WHEREOF, WELLS FARGO BANK, N.A. as the Trustee has caused its corporate name to be affixed
by a duly authorized officer on the date shown in the acknowledgment certificate below:

By: WELLS FARGO BANK, N.A. as Trustee
On June 27th, 2017

LAURA GUZMAN , Vice President Loan Documentation

*L_G*L_GWFMB*06/27/2017 07:58:17 AM* WFMC04NTIM00000000000000006451856* CALOS A* 0483128385 CASTATE_TRUST_REL *L_GWFMB*

FULL RECONVEYANCE Page 2 of 2

A notary public  or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness,  accuracy, or  validity of that  document.

STATE OF California
COUNTY OF San Bernardino

On June 27th, 2017 before me,  LETICIA GONZALEZ, Notary Public, personally appeared LAURA GUZMAN,  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

LETICIA GONZALEZ
Notary Expires: 06/15/2018  #2071564

LETICIA GONZALEZ
COMM. #2071564
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires June 15, 2018

(This area for notarial seal)

"L_G"L_GWFMB"06/27/2017 07:58:17 AM" WFMC04NTIM00000000000000006451856" CALOS A" 0483128385 CASTATE_TRUST_REL ""L_GWFMB"

# **<u>EXHIBIT 6</u>**

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

10100 Santa Monica Blvd.
13th Floor
Los Angeles, California  90067
**Tel: 310.277.6910**
Fax: 310.201.0760

# FACSIMILE COVERSHEET

**DATE:**        July 6, 2023

| RECIPIENT | FAX NO. | PHONE NO. |
|-----------|---------|-----------|
| Wells Fargo Bank, N.A. Attn:  BK Dept. MAC #T7416-023 | 866/278-1179 | |

**FROM:**    James I. Stang            **PHONE:**    310/772-2354

| CLIENT/MATTER NUMBER:    55929.001 | |
|---|---|
| NUMBER OF PAGES WITH COVER PAGE:  8 | ORIGINAL WILL NOT FOLLOW |

**MESSAGE:**

**Attached is letter dated July 6, 2023 with copy of short sale notice from Wells
Fargo Home Mortgage dated April 10, 2017.**

## CAUTION - CONFIDENTIAL

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT
INFORMATION OR WORK PRODUCT.  THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS
ADDRESSED.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED.  IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE.  THANK YOU.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL
FAX ROOM AT 310.772.2347 AS SOON AS POSSIBLE.**

DOCS_LA:349974.1 55929/001



## PACHULSKI STANG ZIEHL & JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
HOUSTON, TX

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE: 310.277.6910**

FACSIMILE: 310.201.0760

**SAN FRANCISCO**

ONE SANSOME STREET
34th FLOOR, SUITE 3430
SAN FRANCISCO
CALIFORNIA 94104

**TELEPHONE: 415.263.7000**

FACSIMILE: 415.263.7010

**DELAWARE**

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302.652.4100**

FACSIMILE: 302.652.4400

**NEW YORK**

780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212.561.7700**

FACSIMILE: 212.561.7777

**TEXAS**

440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE: 713.691.9385**

FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

James I. Stang

310.772.2354
jstang@pszjlaw.com

July 6, 2023

**Via Fax: (866) 278-1179**
**Wells Fargo Bank, N.A.**
**Attn: BK Dept MAC #T7416-023**
**4101 Wiseman Blvd.**
**San Antonio, TX 78251**

> **Re:  Wanda Rozar, Ch. 7 Case No. 15-17446 (C.D. Cal.)**
> **Loan #0483128385**
> **Last 4 of SSN: 1326**
> **Property Address: 28231 Canterbury Ct.,**
> **Valencia, CA 91354**

Dear Sir or Madam:

Pachulski Stang Ziehl & Jones LLP is counsel to Wanda Rozar in connection with the above-referenced chapter 7 bankruptcy case. Wells Fargo Bank, N.A. filed a proof of claim in this case (Claim No. 7) (the "Claim") on September 21, 2015. A copy of the Claim is enclosed for your reference (with attachments omitted).

The Claim relates to a mortgage on property formerly owned by the Debtor located at 28231 Canterbury Court, Valencia, CA 91354. Our records indicate that the debt underlying the Claim was satisfied in connection with a short sale of the subject property. A copy of the short sale notice from Wells Fargo Home Mortgage dated April 10, 2017 is enclosed. Accordingly, we request that you withdraw the Claim. A Withdrawal of Claim form is attached; you may complete and sign it and return it to us for filing with the court.

Very truly yours,

James Stang

James I. Stang

JIS
Enclosures

DOCS_DE:243360.1 55929/001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10100 Santa Monica Blvd., 13th Fl., Los Angeles, California 90067.

True and correct copies of the foregoing documents entitled (*specify*): **OBJECTION OF DEBTOR TO CLAIM OF WELLS FARGO BANK, N.A. [CLAIM NO. 7]; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF JAMES I. STANG AND DEBTOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 16, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **August 16, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 10, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**
The Honorable Vincent P. Zurzolo
U. S. Bankruptcy Court, Central District of California
255 E. Temple Street, Suite 1360
Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 16, 2023 | Sophia L. Lee | /s/ Sophia L. Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**In re: Wanda Rozar**
**Case No. 2:15-bk-17446-VZ**

<u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**</u>

- **Christopher Darden**    Christopher.Darden@wellsfargo.com
- **Howard M Ehrenberg (TR)**    ehrenbergtrustee@gmlaw.com,
  ca25@ecfcbis.com;C123@ecfcbis.com;howard.ehrenberg@ecf.courtdrive.com;Karen.Files
  @gmlaw.com
- **Marian Garza**    ecfnotices@ascensioncapitalgroup.com
- **David A Gill (TR)**    trusteeECF@dgdk.com,
  dgill@ecf.axosfs.com;DanningGill@Gmail.com
- **Asa S Hami**    asa.hami@gmlaw.com,
  ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com
- **Amy Lawrence**    Amy.Lawrence@wellsfargo.com, Shelby.Lawrence@wellsfargo.com
- **Jennifer McGrath**    jmcgrath@mklawllp.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Marisol A Nagata**    bknotifications@ghidottiberger.com, mnagata@ghidottiberger.com
- **William J Smyth**    william@wkdlegal.com, williamsmyth@gmail.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Darlene C Vigil**    cdcaecf@bdfgroup.com

<u>**SERVED BY UNITED STATES MAIL**</u>:

Wells Fargo Bank, N.A.
Attn: BK Dept. – MAC #T7416-023
4101 Wiseman Blvd.
San Antonio, TX 78251

Wells Fargo Bank, N.A.
Attn: CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:350628.2 55929/001

**F 9013-3.1.PROOF.SERVICE**